IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

KEVIN MICHAEL SHELTON,

    Petitioner,

       v.              CIVIL NO.:     WDQ-11-0472
                       CRIMINAL NO.:  WDQ-09-0420

UNITED STATES OF AMERICA,

    Respondent.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

MEMORANDUM OPINION

Kevin Shelton pled guilty to being a felon in possession of
a firearm. On January 22, 2010, he was sentenced to 180 months
imprisonment. Pending is Shelton's *pro se* motion to vacate, set
aside, or correct his sentence under 28 U.S.C. § 2255. The
Court has determined that no hearing is necessary. *See* Rule 8
of the Rules Governing § 2255 Proceedings. For the following
reasons, his motion will be denied.

I.　Background[1]

Shelton was convicted of a felony before January 14, 2009,
and his civil rights have not been restored. ECF No. 15 at 4.

In January 2009, Anne Arundel County Police were
investigating burglaries near Riverdale and identified Shelton
as a suspect. *Id.* On January 14, 2009, Anne Arundel County

---

[1] The facts were agreed to by Shelton and included in his
September 24, 2009 Plea Agreement. ECF No. 15.

Officer Bellis approached Shelton in front of his father's home, "obtained consent to search" him, and found two clear gel-caps of suspected heroin. *Id.* Officer Bellis arrested Shelton, searched him again, and found stolen property. *Id.*

Later that day, the officers obtained a search warrant for the home of Shelton's father. The officers searched Shelton's bedroom and found a Benelli[2] 12-gauge shotgun and other stolen property. *Id.* The shotgun was made outside Maryland and affected interstate and foreign commerce. *Id.*

Shelton's motion to suppress the evidence because he had been illegally stopped was denied. ECF No. 25 Attach. 2 at 2. On May 21, 2009, in the Circuit Court for Anne Arundel County, Shelton pled guilty to burglary and other crimes based on the recovered stolen property. *Id.*

Shelton was federally charged with possession of a firearm by a convicted felon. ECF No. 1. Assistant Federal Defender Jeffrey Risberg represented Shelton. ECF No. 15 at 8. On October 19, 2009, Shelton pled guilty. In the plea agreement, Shelton signed a statement that he:

> underst[oo]d [the agreement], and [he] voluntarily agree[d] to it. Specifically, [he had] reviewed the Factual and Advisory Guidelines Stipulation with [his] attorney, and [he did] not wish to change any part of it. [He was] completely satisfied with the representation of [his] attorney.

---

[2] Manufactured in Italy, *see* S.P. Fjestad, BLUE BOOK OF GUN VALUES, 241, 30th Ed. 2009.

ECF No. 15 at 8. Shelton agreed that "[t]he firearm was manufactured outside the state of Maryland and affected both interstate and foreign commerce," and "[t]he recovered firearm satisfied the definition of that term as it is defined in 18 U.S.C. § 921(a)(3)." *Id.* at 4.

Shelton's adjusted offense level was 30, and his criminal history category was VI. ECF No. 24 at 1. His advisory guidelines range was 180 to 210 months.[3] *Id.* On January 22, 2010, the Court sentenced Shelton to 180 months imprisonment, to be served concurrently with his 10 year state sentence for burglary. ECF No. 23 at 2.

On September 24, 2010, the Court of Special Appeals reversed the Circuit Court's denial of Shelton's motion to suppress. ECF No. 25 Attach. 2 at 14. The court held that the officers had illegally seized Shelton, and the subsequent search violated Shelton's Fourth Amendment rights. *Id.*

On February 22, 2011, Shelton moved to vacate his federal sentence under 28 U.S.C. § 2255. ECF No. 25. On March 2, 2011, the Court ordered the government to respond to the motion and address the timeliness of the Petition. ECF No. 26. On April

---

[3] The low end of the guidelines range of 180 months was determined by the statutory mandatory sentence for Shelton's crime. *See* ECF No. 24 at 1.

26, 2011, the government responded but did not address the
timeliness of his filing.  ECF No. 27.

II.  Analysis

   A.  Ineffective Assistance of Counsel

   The Sixth Amendment guarantees the effective assistance of
counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).
To prove ineffective assistance, Shelton must show: (1)
counsel's performance was deficient and (2) the deficiency
prejudiced his defense.  *Id.* at 687.  To show deficient
performance, Shelton must establish that counsel made errors so
serious that the "representation fell below an objective
standard of reasonableness."  *Id.* at 688.  To show prejudice, he
must demonstrate a "reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different."  *Id.* at 694.  Because Shelton pled
guilty, the focus is whether counsel's "performance affected the
outcome of the plea process."  *Hill v. Lockhart*, 474 U.S. 52, 59
(1985).  Shelton must show that "there is a reasonable
probability that, but for counsel's errors, he would not have
pleaded guilty and would have insisted on going to trial."  *Id.*

   Shelton argues that counsel's performance was deficient
because counsel failed to: (1) move to suppress evidence seized
after Shelton was arrested, and (2) explain or challenge how the

4

firearm affected interstate commerce before he counseled Shelton to plead guilty.

        1.    Failure to Move to Suppress Evidence

Attorneys have a duty to consult with their clients on important decisions about the case, but not on "'every tactical decision.'" *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (*quoting Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)). Counsel generally has superior knowledge of a defendant's case and the criminal legal process, and is better able to make tactical decisions. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998). The only decisions on which a client must be consulted as a matter of law are "'whether to plead guilty, waive a jury, testify on his or her own behalf, or take an appeal.'" *Nixon*, 543 U.S. at 187 (*quoting Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *Sexton*, 163 F.3d at 885. The decision whether to file a motion to suppress evidence is a "classic tactical decision" for which an attorney need not obtain his client's consent. *Sexton*, 163 F.3d at 885.

Shelton contends that his attorney was ineffective because he did not "discuss the legality of the detention or search of his person, or legality of the search warrant," or move to suppress evidence seized after Shelton was arrested. ECF No. 25 Attach. 1 at 7. He asserts that the motion to suppress was "mandatory." *Id.*

Shelton's attorney was not required to discuss the legality of the searches or detention with Shelton, or file a motion to suppress. *See Sexton*, 163 F.3d at 885. Shelton has not shown that the decision not to seek suppression of the evidence was objectively unreasonable. The Court of Special Appeals's decision that the seizure was illegal, does not make that decision unreasonable.[4] The Court is reluctant to second-guess an attorney's tactical decisions. *United States v. Bland*, 23 F.3d 403 (table), No. 93-6849, 1994 WL 199738 at *1 (4th Cir. May 23, 1994) (*citing Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991).[5]

---

[4] *See United States v. Kahoe*, 134 F.3d 1230, 1233 (4th Cir. 1998) ("'The federal gun laws . . . focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons.'" (*quoting Lewis v. United States* 445 U.S. 55, 67 (1980))).

[5] Further, the Court will not consider subsequent developments to determine the reasonableness of an attorney's decisions. *United States v. McNamara*, 74 F.3d 514, 516-17 (4th Cir. 1996) (An attorney's failure to anticipate a change in the law is not unreasonable.); *United States v. Roane*, 378 F.3d 382, 397 (4th Cir. 2004). In *Roane*, the Fourth Circuit held that an attorney was not ineffective for failing to object to the prosecution's use of preemptory challenges in a gender discriminatory manner before the Supreme Court decided *J.E.B. v. Alabama*, 511 U.S. 127 (1994). 378 F.3d at 397. When the defendants were tried, only the Ninth Circuit had applied the *Batson v. Kentucky*, 476 U.S. 79 (1986) principal to gender discrimination. *Roane*, 378 F.3d at 397. The Fourth Circuit had explicitly rejected that application. *Id.*

2.    Failure to Challenge Effect on Commerce

Shelton contends that his attorney should have challenged the allegation that the firearm was "in or affecting commerce." ECF No. 25. Shelton has not shown that this decision was objectively unreasonable. The required proof of an effect on commerce is minimal.[6]

B.    Definition of Shotgun and Commerce

Shelton contends that he did not understand the terms "in [or] affecting commerce" and "shotgun" when he pled guilty. ECF No. 25 at 7-8. When Shelton signed the plea agreement, he affirmed that he "underst[ood]" and "voluntarily agree[d]" to the facts stipulated in the agreement. ECF No. 27 Attach. 1 at 8. In the plea agreement, Shelton stipulated--and affirmed that he understood--that his shotgun "affected both interstate and foreign commerce" and was a firearm as defined in 18 U.S.C. § 921(a)(3). *Id.* at 4. Moreover, at his rearraignment, the Court defined "firearm" and "affected interstate commerce." Rearraignment Tr. 4:2-8, 12:25, 13:1-2. As Shelton affirmed that he understood these terms when he pled guilty and agreed

---

[6] *See United States v. Mosby*, 60 F.3d 454, 456 (8th Cir. 1995) (Congress intended to invoke the full extent of its commerce power in 18 U.S.C. §§ 921 and 922.); *United States v. Chambers*, 408 F.3d 237, 241 (5th Cir. 2005) (Ammunition rounds were "in or affecting commerce" when the rounds were assembled in Texas with powder from Tennessee, primers from South Dakota and bullets from Montana.).

that he had possessed a shotgun which affected commerce,
Shelton's argument must fail.[7]

C.    Appointment of Counsel

Shelton sought appointment of counsel for his § 2255
motion. ECF No. 25 Attach. 1 at 10.   The Court will appoint
counsel to a *pro se* litigant seeking § 2255 relief when it
serves the interests of justice. *See* 18 U.S.C. §
3006A(a)(2)(B).   Here, no hearing is necessary, and Shelton has
adequately stated and argued his grounds for relief; there is no
reason to appoint counsel. *See* Rules Governing § 2255 Proceed-
ings for the U.S. District Courts R. 6, 8 (2010) (court should
appoint counsel when a hearing or discovery will be required).
The interests of justice do not require appointment of counsel.

D.    Certificate of Appealability

A certificate of appealability ("COA") must issue before a
petitioner may appeal the decision in a 28 U.S.C. § 2255 case.
*See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).   A COA may be
issued "only if the applicant has made a substantial showing of
the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).
The petitioner "must demonstrate that reasonable jurists would
find the district court's assessment of the constitutional

---

[7] Shelton mentions the 18 U.S.C. § 3553(a) factors at the end of
his memorandum, apparently to encourage the Court to reduce his
sentence. *See* ECF No. 25 Attach. 1 at 9.   As the Court will not
impose a new sentence, it need not reconsider the sentencing
factors at this time.

claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotations omitted). Denial of a COA does not prevent a petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Shelton has not made a substantial showing of the denial of his constitutional rights, this Court will not issue a COA.

III. Conclusion

For the reasons stated above, Shelton's motion to vacate, set aside, or correct sentence will be denied.

_11/17/11_
Date

_____
William D. Quarles, Jr.
United States District Judge

9